**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SILVERTOP ASSOCIATES, INC., D/B/A RASTA IMPOSTA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>KANGAROO MANUFACTURING, INC.,<br><br>              Defendant. | Civil Action No.<br>1:17-cv-07919-NLH-KMW<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**MOTION DAY: JANUARY 2, 2018** |

---

**MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

---

By:   */s/Alexis Arena*
        Alexis Arena, Esq.
        Eric R. Clendening, Esq.
        FLASTER/GREENBERG P.C.
        Commerce Center
        1810 Chapel Avenue West
Dated:  December 1, 2017    Cherry Hill, NJ 08002-4609
        *Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTS ................................................................................................................................... 5

**A.**   **Procedural History** ................................................................................................ 5

**B.**   **Rasta Imposta's Design and Intellectual Property** ........................................... 6

**C.**   **Kangaroo's Infringement of Rasta Imposta's Designs** ..................................... 8

**D.**   **Consumer Confusion and Third-Party Infringement** ...................................... 9

ARGUMENT ........................................................................................................................ 10

**A.**   **Rasta Imposta Has a Likelihood of Success on the Merits of its Copyright Infringement Claim.** ............................................................................................. 10

    **1.**   **Ownership and Validity Are Presumed.** ................................................. 11

    **2.**   **Copying Is Also Presumed Because of Access and "Substantial Similarity."** ................................................................................................... 14

        *(a)*   *Proof of Access* ................................................................................. 15

        *(b)*   *Substantial Similarity* ...................................................................... 15

**B.**   **Rasta Imposta Has a Likelihood of Success on the Merits of Its Trade Dress Infringement and Unfair Competition Claims.** ...................................... 16

**C.**   **Rasta Imposta Will Suffer Irreparable Harm in the Absence of an Injunction.** ............................................................................................................ 18

**D.**   **The Public Interests and Balance of Hardships Favor an Injunction.** ......... 19

CONCLUSION ..................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
   237 F.3d 198 (3d Cir. 2000)................................................................17

*Apple Computer, Inc. v. Franklin Computer Corp.*,
   714 F.2d 1240 (3d Cir. 1983)..............................................................10

*Brown v. It's Entertainment, Inc.*,
   34 F.Supp.2d 854 49 U.S.P.Q.2d 1939 (E.D.N.Y. 1999) ......................13

*D & R Communications, LLC v. Garett*,
   No. 11–0413, 2011 WL 3329957 (D.N.J. Aug. 2, 2011)......................17

*Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*,
   501 F.2d 917 (3d Cir. 1974)................................................................10

*Feist Publications v. Rural Telephone Service Co.*,
   499 U.S. 340 (1991)..........................................................................8, 12

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
   765 F.3d 205 (3d Cir. 2014) *holding modified by Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017)............................................................18, 19

*Ford Motor Co. v. Summit Motor Products, Inc.*,
   930 F.2d 277 (3d Cir. 1991)................................................................15

*Franklin Mint Corp. v. National Wildlife Art Exchange*, *Inc.*,
   575 F.2d 62 (3d Cir. 1978)..................................................................14

*Fyk v. McCall Patterson Co.*,
   No. 94-2358, 31 U.S.P.Q.2d 1155, 1994 WL 139414 (E.D.Pa. Apr. 19, 1994).........14, 15, 16

*Interpace Corp. v. Lapp, Inc.*,
   721 F.2d 460 (3d Cir. 2000)................................................................17

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
   421 F.3d 199 (3d Cir. 2005)................................................................11

*Lyons Partnership, L.P. v. D&L Amusement & Entertainment, Inc.*,
   702 F.Supp.2d 104 (E.D.N.Y. 2010) ..................................................14

*McNeil Nutritionals, LLC, v. Heartland Sweeteners, LLC*,
   511 F.3d 350 (3d Cir. 2007)................................................................16

*Midway Mfg. Co. v. Bandai-America, Inc.*,
546 F.Supp. 125 (D.N.J. 1982) ..................................................................11

*Mon Cheri Bridals, Inc., v. Wen Wu*,
383 Fed. Appx. 228, 2010 WL 2222497 (3d Cir. 2010)....................................11, 15

*National Theme Productions, Inc., v. Jerry B. Beck, Inc.*,
696 F.Supp. 1348 (S.D.Cal. 1988)..................................................................14

*New Line Cinema Corp. v. Easter Unlimited, Inc.*,
17 U.S.P.Q.2d 1631, 1989 WL 248212 (E.D.N.Y. 1989) ......................................13

*Opticians Assoc. of America,* 920 F.2d at 197 ..............................................................19

*Profoot Inc. v. MSD Consumer Care, Inc.*,
No. 11cv7079, 2012 WL 1231984 (D.N.J. Apr. 12, 2012) ...............................16, 17

*Rasta Imposta v. Amscan, Inc. et al*,
No. 2:14-cv-05142 ..........................................................................................4

*Rasta Imposta v. Fun World*,
No. 1:12-cv-03048 ..........................................................................................4

*Rasta Imposta v. Kmart Corp., et al*,
No. 1:17-cv-07499 ..........................................................................................4

*SK&F, Co. v. Premo Pharm. Laboratories*,
625 F.2d 1055 (3d Cir. 1980)..........................................................................19

*Star Athletica, LLC v. Varsity Brands, Inc.*,
137 S. Ct. 1002 (2017)..........................................................................12, 13, 14

*Telebrands Corp. v. Newmetro Design, LLC*,
No. CV 16-1981, 2016 WL 8999932 (D.N.J. Nov. 10, 2016) (Walls, J.) ..............18

*Warner Bros. Records Inc. v. Walker*,
704 F.Supp.2d 460 (W.D.Pa. 2010)..............................................................10, 19

*Yamate USA Corp. v. Surgerman*,
20 U.S.P.Q.2d 1590, 1991 WL 274854 (D.N.J. 1991) ......................................11

**FEDERAL STATUTES**

17 U.S.C. § 502(a) ......................................................................................10

797 F.2d 1222, 1231-32 (3d Cir. 1986) ..........................................................15

Copyright Act of 1976, 17 U.S.C. § 101 ..........................................................4, 10, 12

iii

## <u>PRELIMINARY STATEMENT</u>

This is a clear-cut case of copyright infringement.  In 2012, plaintiff Silvertop Associates, Inc. d/b/a Rasta Imposta's ("Plaintiff" or "Rasta Imposta") entered into a business relationship with Yagoozon, Inc. ("Yagoozon"), in which Yagoozon sold thousands of banana costumes for Halloween, which were designed and manufactured by Rasta Imposta (Rasta Imposta's "Banana Design").  Yagoozon's founder and CEO was Justin Ligeri ("Ligeri"), who is now the founder and CEO of defendant Kangaroo Manufacturing, Inc. ("Defendant" or "Kangaroo").  During this relationship, Ligeri was informed that Rasta Imposta's Banana Design, which Ligeri was purchasing, was copyright protected and licensed.  When Rasta Imposta terminated the business relationship in 2013, Ligeri sent an email to Rasta Imposta stating:

> …your business decisions have been idiotic…the audacity of claiming rights to the concept of fruit costumes.  The officially licensed Banana – I don't think so. Anyway frankly we are sick of your games and I assure you I'm going to make you regret we ever met.  Yes this is a Legal threat.  Call your local NJ authorities I am threatening you.

*See* Declaration of Robert Berman ("Berman Decl,"), Ex. B at 1.  Ligeri then proceeded to make extremely offensive, anti-Semitic remarks in the email to Rasta Imposta's CEO Robert Berman, who is Jewish, and threatened Rasta Imposta's employees in a barrage of emails and phone calls. *See id.* at 1-6.

On or about September 25, 2017, Rasta Imposta discovered that Ligeri's company Kangaroo had copied the Banana Design and was offering for sale Kangaroo Item Nos. 10477 and 10478, pictured below alongside Rasta Imposta's copyrighted Banana Design:

6431298 v3



RASTA IMPOSTA   KANGAROO ITEM 10477   KANGAROO ITEM 10478

Contrary to Mr. Ligeri's email, Rasta Imposta has never "claim[ed] rights in the concept of fruit costumes" or maintained that all banana costumes are infringing.  There are many different ways to make a banana costume, as evidenced by the various banana costumes being sold in the marketplace currently.  *See* Collection of 21 different banana designs and costumes, attached to the Declaration of Alexis Arena, Esq. ("Arena Decl."), as Exhibit A.  For example, Rasta Imposta has not taken the position that these costumes are infringing:



2



The issue in this case is not that Ligeri decided to make his own banana costume after buying Rasta Imposta's costume; the issue is that rather than expend the time and resources to create his own unique design, Ligeri decided to directly replicate Rasta Imposta's costume design.  By mass producing the same costume in China, undercutting Rasta Imposta's price, and widely distributing the product on Amazon through third party sellers (some of which are not located in the United States), Kangaroo is earning significant profits entirely at Rasta Imposta's expense.

Underscoring what a clear-cut case of infringement this is, as described below, at least one foreign vendor of Kangaroo's is labeling the Kangaroo product as the "Rasta Imposta" product.  Consumers familiar with Rasta Imposta's costume have contacted Rasta Imposta to alert Rasta Imposta that they bought the "Rasta Imposta" banana costume on Amazon.com and received a costume labeled both "Kangaroo" and "Rasta Imposta," which was apparently manufactured by Kangaroo.  *See* Berman Decl. ¶¶ 19-22; Arena Decl., Ex. D.  Kangaroo's conduct is not only harmful to Rasta Imposta; it is deceptive to consumers.

Rasta Imposta filed suit soon after learning of Kangaroo's conduct.  As a result of early settlement discussions between counsel, Kangaroo agreed to "cease manufacturing, ordering,

offering for sale, advertising, marketing, promoting, selling and distributing [Rasta Imposta's] Banana Design (and any substantially similar Banana costume) until December 1, 2017," while the parties discussed settlement.  *See* Stipulation of Standstill Period, ECF No. 7-2, at 2.  Those settlement discussions were not successful and this Motion follows.  This Motion seeks an extension of that stipulated provision while the litigation proceeds.

Injunctive relief is sought to prevent further consumer confusion, mislabeling, and infringement from occurring while the litigation is pending.  Although Ligeri continues to believe that no copyright protection should be afforded to fruit costumes and wishes to take that matter to Court, legally, it is clear that he is incorrect.  There are only two elements of a copyright infringement claim under the Copyright Act: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.  Ownership under the first element is *presumed* because Rasta Imposta owns Copyright Registration No. VA 1-707-439, which was issued on March 26, 2010, for the Banana Design.  The Copyright Office has already considered the question of whether Rasta Imposta's banana costume is sufficiently protectable and concluded that it is protectable.  Ligeri is asking the Court to undo Rasta Imposta's years of successful copyright protection[1], as well as prior decisions of the Copyright Office,[2] as well as the controlling legal precedent described below.

Under the second element, copying is *also presumed*, because Kangaroo's CEO Ligeri had access to, notice of, and previously purchased the Rasta Imposta product.  The Kangaroo product he created was so similar that third parties have used the parties' products

---

[1] [1] Rasta Imposta has aggressively protected its intellectual property rights in the Banana Design from third party infringement.  *See, e.g., Rasta Imposta v. Fun World*, No. 1:12-cv-03048 (District of New Jersey); *Rasta Imposta v. Amscan, Inc. et al*, No. 2:14-cv-05142 (District of New Jersey); and *Rasta Imposta v. Kmart Corp., et al*, No. 1:17-cv-07499 (District of New Jersey).

[2] *See* January 12, 2011 Letter from Copyright Office, Ex. C to Arena Decl.

interchangeably and have mislabeled the products.  This is a case in which the infringement is unusually willful.  Ligeri has not yet specifically denied that he intentionally copied Rasta Imposta's costume; he just maintains that the design is not protectable.

Because the Rasta Imposta Design is protectable under controlling United States Supreme Court precedent, as the Copyright Office has already concluded, a preliminary injunction should be granted.  In the absence of a preliminary injunction, Kangaroo's manufacturing, sales and marketing will continue to intensify again as the parties approach Halloween 2018.  Consumers will continue to be confused by mislabeled product, wrongfully assuming that Kangaroo's product is actually Rasta Imposta's product or that there is some affiliation between the parties.  Rasta Imposta understands that Kangaroo begins to start advertising its knock-off costume again shortly.

## FACTS

### A.    Procedural History

Rasta Imposta filed its complaint against Kangaroo on October 5, 2017.  *See* Complaint, ECF No. 1.  Rasta Imposta immediately informed Kangaroo that it intended to file a motion for a temporary restraining order and preliminary injunction, requesting that the Court preliminarily enjoin Kangaroo from manufacturing, selling, distributing, offering for sale, advertising, marketing, and/or promoting any design confusingly or substantially similar to Rasta Imposta's Banana Design, specifically including Kangaroo's knock-off Items No. 10477 and 10478.  *See* Stipulation of Standstill Period, ECF No. 7-2, at 2.  The parties agreed to a standstill period to discuss an amicable resolution to the matter prior to December 1, 2017, during which time, Kangaroo's infringement ceased and the parties discussed settlement.  *Id.*  Rasta Imposta also granted Kangaroo an extension to answer or otherwise respond to the Complaint until December 15, 2017.  *Id.*  The stipulation further provided that if the parties could not reach a resolution by

5

December 1, 2017, Rasta Imposta would file its motion for a preliminary injunction. *Id.* at 3.

Magistrate Judge Karen M. Williams granted the parties' joint request for an extension of time

on October 25, 2017, which attached the Stipulation of Standstill Period as Exhibit A. *See* ECF

No. 8. The parties failed to reach a resolution, and now, Rasta Imposta moves for injunctive

relief to continue the stipulated injunctive relief.

### B. Rasta Imposta's Design and Intellectual Property

Rasta Imposta is a family-owned business that has been located in Runnemede, New

Jersey, for over 20 years. It designs, manufactures, and sells innovative and distinctive costumes

for adults and children. Berman Decl. ¶ 2. Rasta Imposta began more than twenty years ago

when its Chief Executive Officer, Robert Berman, created the Original Rasta Hat with sewn-in

dreadlocks. *Id.* This led to the creation of new designs and the company's expansion into the

"Halloween Industry." *Id.*

In 1998, Rasta Imposta introduced a collection of costumes to complement its existing

line of hats. *Id.* at ¶ 3. Rasta Imposta now manufactures thousands of costumes and accessories

for kids and adults of all ages. *Id.* In fact, the majority of Rasta Imposta's sales are directly tied

to the retail cycle associated with the Halloween season. *Id.* Crucial to Rasta Imposta's brand is

that consumers recognize Rasta Imposta as a creator and manufacturer of unique costume

designs that are made with high quality materials. *Id.* Rasta Imposta strives to consistently

create new and innovative looks that set it apart from other costume designers and

manufacturers. *Id.*

Rasta Imposta began offering the Banana Design to the public on or about March 9,

2001. *Id.* at ¶ 4. When it debuted in 2001, the Banana Design was the only costume design with

this distinctive overall appearance. *Id.* at ¶ 5. Since then, Rasta Imposta has encountered some

knock-off designs and has been required to protect and enforce its intellectual property in the

Banana Design.  *Id*.  Rasta Imposta has entered into agreements to license the Banana Design under certain terms and conditions.  *Id*.

The appearance and trade dress of Rasta Imposta's distinctive Banana Design is identified by a combination of arbitrary and distinct visual elements which make up its overall appearance, design, and trade dress, including but not limited to the positioning of the cutout holes in the Banana Design, the Banana Design's black tips at the ends, the placement of the banana ends, and the vertical lines running down the middle.  *Id.* at ¶ 6.

Due to Rasta Imposta's manufacture and advertisement of the Banana Design between 2001 and the present, the Banana Design has become recognizable as a unique banana costume design throughout the United States.  *Id.* at ¶ 7.  Following its success, one costume retailer was inquiring into whether Rasta Imposta would come up with a new and innovative costume, and asked Rasta Imposta's CEO - "What is your next 'banana'?"  *Id*. at ¶ 8.

After becoming aware of repeated knock-offs of costume designs by competitors, Rasta Imposta filed a copyright application to register the Banana Design on or about March 23, 2010. *Id*. at ¶ 9; Copyright Registration, attached to Berman Decl. as Ex. A.  Rasta Imposta owns Copyright Registration No. VA 1-707-439, which was issued March 26, 2010, for the Banana Design.  *Id.* at ¶ 10.

Rasta Imposta owns another registration for its "Peeled Banana Costume."  *See* Printout from U.S. Copyright Office website, Ex. B to Arena Decl.  Before issuing a registration to Rasta Imposta for Rasta Imposta's "Peeled Banana" costume, the U.S. Copyright Office's Examining Attorney engaged in an analysis of whether the costume was registerable as a "useful article" or a "sculptural work of art."  The Copyright Office determined that the costume "can stand alone as a sculptural work of art that would support a copyright registration under the standards set forth

7

in *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340 (1991)."  January 12, 2011

Letter from Copyright Office, Ex. C to Arena Decl.

> ### C.      Kangaroo's Infringement of Rasta Imposta's Designs

The founder of Kangaroo, Ligeri, previously owned another company called Yagoozon.

Berman Decl. ¶ 11.  Ligeri and Yagoozon entered into a business relationship with Rasta

Imposta in 2012 in order to sell Rasta Imposta's costumes, including its Banana Design.  *Id.* at ¶

12.  During their discussions, Ligeri was informed of Rasta Imposta's copyright registration for

the Banana Design, and Yagoozon purchased thousands of Rasta Imposta's banana costumes.

*Id.* at ¶ 13.  Ligeri and Rasta Imposta's attempted business relationship did not end on good

terms.  *Id.* at ¶ 14.  Among other things, Ligeri informed Rasta Imposta that he did not intend to

respect Rasta Imposta's intellectual property rights in the Banana Design, stating: "The officially

licensed Banana – I don't think so."  *Id.* at ¶ 15, and Ex. B thereto.  In the same email, Ligeri

went on to threaten Berman and Rasta Imposta by using extremely offensive and outrageous

language.  *Id.* at ¶¶ 15 and 16, and Ex B. thereto.

On or about September 25, 2017, Rasta Imposta discovered that Ligeri's company

Kangaroo had copied the Banana Design and was offering Kangaroo Item Nos. 10477 and

10478.  *Id.* at ¶ 17; Comparison in Complaint at ¶ 9.  Rasta Imposta discovered the infringement

when it was forwarded a copy of Kangaroo Costume's 2017 Halloween catalogue by a third

party.  Berman Decl. ¶ 17.

The Kangaroo costumes have the same exact shape and cutout holes as the Banana

Design, the ends of the bananas are placed similarly, the vertical lines running down the middle

of the bananas are the same, and the one-piece costumes are worn on the body the same way as

the Banana Design.  *See* Comparison in Complaint at ¶ 9.  Additionally, Kangaroo outfitted its

costume models identically to the Rasta Imposta model, showing the product with long black pants and a black shirt (and matching black dress shoes for Item No. 10477). *Id.*

Third parties have licensed the Banana Design from Rasta Imposta, but Kangaroo does not have any license to use the Banana Design.  Berman Decl. ¶ 18.  A quick search on Google Images for "banana costume" reveals unique banana costume designs that do not copy, mimic, or infringe Rasta Imposta's copyrighted design, yet rather than expend the time and resources to create its own design, Kangaroo chose to directly replicate Rasta Imposta's Banana Design. *See* Arena Decl. at Ex. A.

### D.   Consumer Confusion and Third-Party Infringement

There is direct evidence of consumer confusion and counterfeiting on Amazon, where Kangaroo's infringing banana costumes are sold alongside Rasta Imposta's copyrighted Banana Design.  On or about October 19, 2017, Rasta Imposta received an email from a concerned consumer who said that counterfeiting was occurring on Amazon.com.  Berman Decl. ¶ 19.  The consumer stated that third-party sellers were listing the Rasta Imposta banana costume for sale, but consumers who purchased these costumes were actually being sent the Kangaroo banana costumes instead.  *Id.* at ¶ 20.  Specifically, the consumer stated that third-party seller AlgaeCal, which is apparently a Canadian company, was engaging in this practice.  *Id.* at ¶ 21.  The costume was advertised on Amazon.com as the "Rasta Imposta Lightweight Banana Costume," but the consumer was being shipped a Kangaroo costume "Made in China" with a "Rasta Imposta" label placed on the package.  Arena Decl., Exhibit D at 1-4.  On or about November 9, 2017, Rasta Imposta received a voicemail from a concerned consumer who expressed the same concerns regarding counterfeiting and third-party seller AlgaeCal on Amazon.com.  Berman Decl. ¶ 22.  When the undersigned counsel ordered a "Rasta Imposta" banana costume from

9

AlgaeCal, she was also shipped one of Defendant's infringing costumes with the same Rasta Imposta label placed on the package.  *See* Arena Decl., Exhibit D at 4.

## ARGUMENT

A party moving for a preliminary injunction must demonstrate that: (1) it has a likelihood of success on the merits; (2) it will suffer irreparable harm in the absence of an injunction; (3) the balance of hardships favors an injunction; and (4) the public interest favors an injunction.  *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1245-46 (3d Cir. 1983) (citing *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)).

In copyright infringement cases, the first element is the key.  The Copyright Act itself explicitly contemplates preliminary and permanent injunctive relief as a remedy "to prevent or restrain infringement of a copyright."  *See* 17 U.S.C. §502(a).  If a plaintiff is likely to succeed on the merits of its copyright infringement claim, the law favors injunctive relief.  *Apple Computer, Inc.*, 714 F.2d at 1254. "A copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm." *Id.*  Moreover, "[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Id.* at 1255.  Finally, "the balance of hardships weighs strongly in favor of an injunction where all that is requested is that Defendant comply with the Copyright Act." *Warner Bros. Records Inc. v. Walker*, 704 F.Supp.2d 460, 469 (W.D.Pa. 2010) (quotation and brackets omitted).

### A.    Rasta Imposta Has a Likelihood of Success on the Merits of its Copyright Infringement Claim.

To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership

of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work. *See Mon Cheri Bridals, Inc., v. Wen Wu*, 383 Fed. Appx. 228, 2010 WL 2222497, at *1 (3d Cir. 2010) (quoting *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005)).

### 1.      Ownership and Validity Are Presumed.

"The introduction of a certificate of registration from the Copyright Office is prima facie evidence of validity."  *Mon Cheri Bridals,* 383 Fed. Appx. at 231 ("[P]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable."); *Yamate USA Corp. v. Surgerman*, 20 U.S.P.Q.2d 1590, 1991 WL 274854, at *5 (D.N.J. 1991) ("Copyright certificates produced by a plaintiff constitute *prima facie* evidence of both validity and ownership.") (*quoting Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 139 (D.N.J. 1982)).  Accordingly, Plaintiff's ownership of the copyright registration for the Banana Design creates a presumption that the copyright is valid and that the work depicted therein is of copyrightable authorship.  In granting registration, the Copyright Office already determined that the work met certain requirements.  Kangaroo bears the heavy burden of rebutting the presumption of ownership.

In addition, Rasta Imposta owns two banana costume registrations: one for its Peeled Banana Costume and one for the Banana Design.  In reviewing the Peeled Banana Costume application, the Copyright Office also engaged in a back-and-forth with Rasta Imposta over whether its Peeled Banana Costume was copyrightable and determined that:

> Upon further review, although this work, a costume, is considered a useful article, we have determined that it meets the requirement of physical separability, by being representation of a peeled banana, and believe that it can stand alone as a sculptural work of art that would support a copyright registration under the standards set forth in Feist Publications v. Rural Telephone Service Co., 499 U.S. 340 (1991).

6431298 v3

*See* January 12, 2011 Letter from Copyright Office, Ex. C to Arena Decl.  Although the "Peeled Banana Costume" is not at issue in this proceeding, there is no reason that the Copyright Office's conclusion would not also apply to Rasta Imposta's Banana Design.

The Copyright Office's decision to afford copyright protection to Rasta Imposta's designs is consistent with the U.S. Supreme Court's decision in *Feist* and its recent decision in *Star Athletica, LLC v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1004 (2017).  In *Star Athletica*, the Supreme Court confirmed the broad copyright protection afforded to products that are worn on the body, but also contain protectable design elements.  Although banana costumes are worn on the body and therefore may qualify as "useful articles," they also can have distinctive sculptural features.  The Copyright Act of 1976 provides that sculptural features of the design of a useful article are eligible for copyright protection if those features "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  *Star Athletica*, 137 S. Ct. at 1004 (quoting The Copyright Act of 1976, 17 U.S.C. § 101).  The separability requirement is satisfied if the decision maker can examine the useful article and identify a feature that "(1) can be perceived as a two or three dimensional work of art separate from the useful article, and (2) would qualify as a protectable pictorial, graphic or sculptural work – either on its own or fixed in some other tangible medium of expression – if it were imagined separately from the useful article into which it is incorporated."  *Id.*

When applying the Supreme Court separability test to the case at hand, it is evident that the unique features on the Banana Design (the overall shape and cut-out holes of the costume, the black ends of the banana, the vertical lines running down the middle of the banana) could be removed and displayed elsewhere.  There is no reason the Banana Design's unique design elements could not be applied to a two-dimensional painter's canvas, made into a three-

dimensional item like a piñata, a clay sculpture or a paperweight.  As seen in the 21 banana

costume designs attached to the Arena Decl. as Exhibit A, the Banana Design is the only

costume with that unique cut (which Kangaroo has copied).  The Banana Design would be easily

differentiated from the other costumes in Exhibit A if all of the bananas were reduced to a two-

dimensional work of art.  Further, any argument by opposing counsel that a banana cannot

contain unique features that are protectable and independently recognizable is belied by the

famous Andy Warhol painting and Velvet Underground & Nico album cover of an iconic

banana:



Consumers are able to recognize this banana design when it is placed on a mug or t-shirt

because of its distinctive design elements.  Similarly, consumers can differentiate the Rasta

Imposta Banana Design from other costumes that are not copies or licensed works because of its

distinctive design elements.

Even before *Star Athletica*, courts consistently held that costume designs were

protectable and issued preliminary injunctions in similar cases.  *See New Line Cinema Corp. v.*

*Easter Unlimited, Inc.*, 17 U.S.P.Q.2d 1631, 1989 WL 248212, at *4 (E.D.N.Y. 1989) (granting

preliminary injunction where defendant unsuccessfully argued its "Freddy Krueger" costume

was sufficiently dissimilar); *Brown v. It's Entertainment, Inc.*, 34 F.Supp.2d 854, 857-58 49

U.S.P.Q.2d 1939 (E.D.N.Y. 1999) (granting preliminary injunction where photograph of

infringing costume was substantially similar to photograph of "Arthur" character); *National Theme Productions, Inc., v. Jerry B. Beck, Inc*., 696 F.Supp. 1348, 1356 (S.D.Cal. 1988) (granting permanent injunction prohibiting infringing "Rabbit in Hat" "Tigress" "Magic Dragon" and "Pampered Pup" costumes where "[t]he overall impression is of the exact same costume"); *Lyons Partnership, L.P. v. D&L Amusement & Entertainment, Inc*., 702 F.Supp.2d 104, 118 (E.D.N.Y. 2010) (granting permanent injunction to prohibit defendants from continuing to infringe plaintiff's copyrighted Barney costumes).

Rasta Imposta is not asserting that it has a right to prevent competitors to manufacture and sell banana costumes, but Rasta Imposta does have a right to prevent competitors from selling banana costumes that are substantially similar to its copyright Banana Design. *See Star Athletica*, 137 S. Ct. at 1013. Here, Kangaroo's conduct should be enjoined because Kangaroo has created an exact copy of the work that incorporates all of the same design elements, for the purpose of taking sales from Rasta Imposta.

## 2. Copying Is Also Presumed Because of Access and "Substantial Similarity."

Copying may be shown through either direct or circumstantial evidence. *Franklin Mint Corp. v. National Wildlife Art Exchange*, *Inc.*, 575 F.2d 62, 64 (3d Cir. 1978); *see also Fyk v. McCall Patterson Co.,* No. 94-2358, 31 U.S.P.Q.2d 1155, 1994 WL 139414, at *2 (E.D.Pa. Apr. 19, 1994). In this case, Kangaroo has not yet denied that it directly copied Rasta Imposta's costume and direct evidence may exist. Discovery has not yet been taken.

Even without any direct evidence, however, copying is presumed in this case. Because "it is rarely possible to prove copying through direct evidence... copying may be proved inferentially by showing that the defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work."

14

*Whelan Associates,* 797 F.2d 1222, 1231-32 (3d Cir. 1986) (internal citations omitted); *see also Mon Cheri Bridals*, 383 Fed. Appx. at 235 ("A plaintiff establishes unauthorized copying by showing that the defendant had access to a copyrighted work and that there are substantial similarities between the two works.") (quotations omitted).

### (a) Proof of Access

In this case, it is undisputed that Rasta Imposta's Banana Design was known to Kangaroo and Ligeri prior to Kangaroo's copying of the above costume, as Ligeri previously purchased thousands of the costumes from Rasta Imposta through his prior company Yagoozon.  Proof of access requires only an opportunity to view or to copy plaintiff's copyrighted work.  *See Fyk*, 1994 WL 139414, at *2 (proof of access established where plaintiff "sold her clothing publicly and, therefore, the defendant could readily purchase the clothing for view [her] promotional materials."); *see also Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 294 (3d Cir. 1991) (proof of access established by the appearance of the protected image in national advertisements).  Rasta Imposta advertises its Banana Design to the public online and in catalogs, in addition to making the costumes commercially available for sale in retail outlets throughout the country.  Moreover, Kangaroo was also specifically aware of the Banana Design because Ligeri's prior company had purchased a substantial quantity of the costumes from Rasta Imposta in 2012.

### (b) Substantial Similarity

The second element, substantial similarity is a two-part inquiry: (1) there must be a sufficient similarity between the two works in question to conclude that the infringer used the copyrighted work in making its own; and (2) there must be sufficient intrinsic similarity for an ordinary lay observer to conclude that there has been an unlawful appropriation. *See Fyk*, 1994 WL 139414, at *2 (citing *Whelan*, 797 F.2d at 1232).  Substantial similarity has been established

where "upon observation of the competing products, the average reasonable lay viewer would conclude that the products marketed and sold by [the competitor] are so similar to those developed by [plaintiff] as to make it more likely than not that [the infringing] products were illicitly copied." *See Fyk*, 1994 WL 139414, at *2 (granting injunctive relief where "dino, dog, shark and duck" costume patterns were substantially similar to infringing costume patterns).  A side-by-side comparison of the costumes at issue is sufficient circumstantial evidence from which to infer copying. *See* Complaint, at ¶ 9.

In this case, the parties' products are so similar that third party vendors are using them interchangeably and shipping Kangaroo's product to a consumer that orders Rasta Imposta's product.  The products also look nearly identical when displayed to consumers online, and this is how consumers order Kangaroo's costumes from Amazon.  Kangaroo has even mimicked Rasta Imposta's approach to marketing the costume, displaying the costume on a man wearing long black pants, a black shirt, and black dress shoes. *See* supra at 2.  For the foregoing reasons, Rasta Imposta has demonstrated a case for equitable relief based on the substantial similarity of the works, and the Court may infer copying.

**B.**      **Rasta Imposta Has a Likelihood of Success on the Merits of Its Trade Dress Infringement and Unfair Competition Claims.**

Although this Motion should be granted on the basis of Rasta Imposta's copyright claim alone, it is worth noting that Rasta Imposta's trade dress and unfair competition claims constitute a basis for granting the Motion as well.  To state a valid claim for trade dress infringement under federal law, a plaintiff must plead: (1) the design is inherently distinctive or has acquired secondary meaning; and (2) consumers are likely to confuse the source of the plaintiff's products with that of the defendant's product. *Profoot Inc. v. MSD Consumer Care, Inc*., No. 11cv7079, 2012 WL 1231984, at *3 (D.N.J. Apr. 12, 2012) (*citing McNeil Nutritionals, LLC, v. Heartland*

16

*Sweeteners, LLC*, 511 F.3d 350, 257 (3d Cir. 2007)).  Secondary meaning "is established through extensive advertising which creates in the mind of consumers an association between the mark and the provider of the services advertised under the mark."  *Id*. at *3 (internal quotation omitted).

A likelihood of confusion has been found to exist where "the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 211 (3d Cir. 2000) (internal quotation omitted). "Where the trademark owner and the alleged infringer deal in competing goods and services, the court need rarely look beyond the mark itself." *Interpace Corp. v. Lapp, Inc*., 721 F.2d 460, 462 (3d Cir. 2000).  The elements of an unfair competition claim under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law.  *See D & R Communications, LLC v. Garett*, No. 11–0413, 2011 WL 3329957, at *4 (D.N.J. Aug. 2, 2011).

Here, the parties' goods are extremely proximate and the same channel of commerce is at issue.  Rasta Imposta and Kangaroo are both selling banana costumes through Amazon.  *See* Arena Decl. at Ex. D.  Rasta Imposta has become known for its distinctive and unique Banana Design, and Kangaroo is attempting to profit from Rasta Imposta's good will in that design. Consumers are likely to be confused and have been confused due to the similarity of the banana costumes.  At least one of Kangaroo's vendors was engaging in counterfeiting by advertising Rasta Imposta's banana costumes for sale on Amazon and then shipping Kangaroo's products instead.  *Id.*

### C.    Rasta Imposta Will Suffer Irreparable Harm in the Absence of an Injunction.

As discussed above, Rasta Imposta has established a prima facie case of copyright infringement and has shown a substantial likelihood that it will prevail on the merits at trial.  The Court must now "consider whether irreparable injury is *likely* in the absence of an injunction." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216–17 (3d Cir. 2014) *holding modified by Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) (finding that the standard of demonstrating that irreparable injury is "likely" applies to copyright and Lanham Act cases). Courts have established the following grounds for finding irreparable harm: loss of control of reputation, loss of trade, and loss of good will.  *Telebrands Corp. v. Newmetro Design, LLC*, No. CV 16-1981 (WHW-CLW), 2016 WL 8999932, at *17 (D.N.J. Nov. 10, 2016) (Walls, J.) (internal quotation omitted).  In addition, even though a prima facie case of copyright infringement no longer creates a presumption of irreparable injury, irreparable harm can be based on past and future infringement where the future infringement is likely to occur beyond mere speculation. *See id.* (internal citations omitted).

In this case, Rasta Imposta has demonstrated all of the factors for irreparable injury. Since Kangaroo is selling knock-off banana costumes to consumers through the same channel as Rasta Imposta, there is a loss of control of reputation.  Even more flagrant, a Kangaroo vendor is engaging in counterfeiting by advertising Rasta Imposta's banana costumes for sale on Amazon and instead shipping Kangaroo's inferior products to unwitting consumers.  Rasta Imposta is unable to control or monitor the quality of Kangaroo's Items No. 10477 and 10478, the materials from which they are made, and the manner that they are being presented to consumers. Moreover, consumers who are used to going to Amazon and other online retail outlets to purchase their Rasta Imposta banana costumes are now likely to purchase Kangaroo's costumes

instead, without realizing that the products are not affiliated with Rasta Imposta.  As a direct result, Rasta Imposta is incurring a loss of trade and loss of good will.  Finally, since Kangaroo plans to continue its conduct, the threat of future infringement is clear.

> **D.** **The Public Interests and Balance of Hardships Favor an Injunction.**

The final two factors favor the issuance of an injunction against Kangaroo.  The third factor that Courts consider when granting an injunction is the balancing of hardships to the respective parties.  *See Opticians Assoc. of America,* 920 F.2d at 197.  The fourth factor is whether the issuance of an injunction would further the public interest.  *Id.*  The balance of the hardships and public interest favor an injunction when there is a likelihood of success on the merits of an infringement claim.  *See id.* 197-98 ("Having already established that there is a likelihood of consumer confusion created by the concurrent use… it follows that if such use continues, the public interest would be damaged."); *SK&F, Co. v. Premo Pharm. Laboratories,* 625 F.2d 1055, 1057 (3d Cir. 1980) ("preventing deception of the public is itself in the public interest"); *Warner Bros. Records Inc. v. Walker*, 704 F.Supp.2d 460, 469 (W.D. Pa. 2010) (the balance of hardships also strongly favors an injunction where there is a likelihood of success on the merits of an infringement claim).  Rasta Imposta has a likelihood of success on its intellectual property claims, and accordingly, the public interest and balance of hardships favor an injunction.

Additionally, the hardship to Kangaroo of having to cease marketing and selling two costumes obviously is not that great. Costume manufacturers must cease selling products due to recalls, safety hazards, or other issues all the time.  In contrast, the harm to Rasta Imposta, a relatively small company that is unable to control consumer perception of its brand through counterfeiting on Amazon that results from Kangaroo's conduct, is very great.  The Banana Design means a lot to Rasta Imposta and comparatively very little to Kangaroo.  Accordingly,

Rasta Imposta requests that Kangaroo be required to cease advertising and selling Kangaroo's knock-offs of the Banana Design.

## <u>CONCLUSION</u>

For the foregoing reasons, plaintiff Rasta Imposta respectfully requests that this Court grant it motion for a preliminary injunction and order that Kangaroo and its officers, agents, servants, and employees, and any of its affiliated entities, be preliminarily enjoined from manufacturing, selling, distributing, offering for sale, advertising, marketing and/or promoting any design confusingly or substantially similar to Rasta Imposta's Banana Design, specifically including the knock-off Items No. 10477 and 10478 identified in Rasta Imposta's Complaint.

Respectfully submitted,

Dated: December 1, 2017

_____

Alexis Arena, Esq.
Eric R. Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900
Fax:  (856) 661-1919
alexis.arena@flastergreenberg.com
eric.clendening@flastergreenberg.com
*Attorneys for Plaintiffs*

20