SILVERTOP ASSOCIATES, INC.          1:17-cv-7919 (NLH/KMW)
d/b/a RASTA IMPOSTA,
                                    **OPINION**
           Plaintiff,

      v.

KANGAROO MANUFACTURING, INC.,

           Defendant.

**APPEARANCES**:

ERIC ROBERT CLENDENING
ALEXIS KATHRYN ARENA
FLASTER/GREENBERG PC
1810 CHAPEL AVENUE WEST
CHERRY HILL, NJ 08002
      On behalf of Plaintiff

BRUCE ALLEN SCHOENBERG
DAVID ALAN SCHRADER
A. JONATHAN TRAFIMOW
MORITT HOCK & HAMROFF LLP
1407 BROADWAY
SUITE 3900
NEW YORK, NY 10018
      On behalf of Defendant

**HILLMAN**, District Judge

      This matter concerns Defendant Kangaroo Manufacturing, Inc.

("Kangaroo")'s alleged copyright infringement of a banana

costume made and copyrighted by Plaintiff Silvertop Associates,

Inc., doing business as Rasta Imposta ("Rasta Imposta").  Before

the Court is Rasta Imposta's Motion for Preliminary Injunction and Kangaroo's Cross-Motion to Dismiss. For the reasons that follow, the Court will grant Rasta Imposta's Motion for Preliminary Injunction, grant Kangaroo's Cross-Motion to Dismiss as to Count III of the Complaint, and deny Kangaroo's Cross-Motion to Dismiss as to Count I and Count II of the Complaint. The Court will require a $100,000 bond be posted by Rasta Imposta to maintain the preliminary injunction.

**I.**

The Court takes the following facts from Robert Berman's Declaration in support of Rasta Imposta's Motion for Preliminary Injunction and from his testimony at a hearing before the Court. Berman is the Chief Executive Officer of Rasta Imposta, a business that designs, manufactures, and sells costumes for adults and children. Among these costumes, Rasta Imposta began to offer a banana design on March 9, 2011 ("the Banana Costume"). While Rasta Imposta has licensed the Banana Costume to third parties, Kangaroo does not have a license for the Banana Costume. On March 23, 2010, Rasta Imposta filed a copyright application to register the Banana Costume. Copyright Registration No. VA 1-707-439 was issued by the United States Copyright Office on March 26, 2010 for the Banana Costume.

In 2012, Rasta Imposta entered into a business relationship with Yagoozon, Inc. ("Yagoozon"), founded by Justin Ligeri.

This relationship was formed for Yagoozon to sell Rasta Imposta's Banana Costume. Over the course of the business relationship, Ligeri was informed of Rasta Imposta's copyright registration for the Banana Costume, and Yagoozon purchased thousands of them from Rasta Imposta. The business relationship eventually ended. Ligeri is also the founder of Kangaroo. Around September 25, 2017, Berman discovered Kangaroo was selling a costume that resembled the Banana Costume at issue in this case.

Rasta Imposta filed its Complaint with the Court on October 5, 2017, bringing claims for copyright infringement (Count I), trade dress infringement (Count II), and unfair competition (Count III). On October 19, 2017, the parties entered into a Stipulation of Standstill Period whereby, in anticipation of "discuss[ing] an amicable resolution to this matter prior to December 1, 2017," the parties agreed that Kangaroo would "cease manufacturing, ordering, offering for sale, advertising, marketing, promoting, selling and distributing Plaintiff's Banana Design (and any substantially similar Banana costume) until December 1, 2017." It further stipulated that "if this case is not settled or otherwise resolved prior to December 1, 2017, Plaintiff will file its application for a preliminary injunction on or about December 1, 2017."

Settlement discussions were not successful and on December

1, 2017, Rasta Imposta filed a Motion for Preliminary Injunction. Kangaroo responded with a December 21, 2017 Cross-Motion to Dismiss. This Court held a hearing on the pending motions on January 26, 2018, which was continued on February 13, 2018. Rasta Imposta presented the testimony of Berman, who was cross-examined by Kangaroo, and who testified consistently with his declaration. The parties submitted supplemental briefing following the hearing, which was complete as of March 8, 2018.

## II.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). In Kangaroo's Cross-Motion to Dismiss, Kangaroo argues it is not subject to personal jurisdiction in New Jersey. This issue was addressed at the hearing before the Court and in the supplemental briefing. In its March 2, 2018 letter brief, Kangaroo "decided to withdraw its jurisdictional objection" and "to consent to personal jurisdiction in this proceeding." Accordingly, the Court has personal jurisdiction, by consent, over Kangaroo. See Azubuko v. E. Bank, 160 F. App'x 143, 146 (3d Cir. 2005) ("[P]ersonal jurisdiction may be conferred by consent of the parties . . . ." (quoting Zelson v. Thomforde, 412 F.2d 56, 59 (3d Cir. 1969))).

## III.

The Court turns to the merits of Rasta Imposta's Motion for Preliminary Injunction. "A district court must consider four

4

elements in determining whether to grant a preliminary injunction: (1) reasonable probability of success on the merits; (2) irreparable injury to the moving party; (3) harm to the nonmoving party; and (4) the public interest." Goodwin v. Castille, 465 F. App'x 157, 160 (3d Cir. 2012) (citing Iles v. de Jongh, 638 F.3d 169, 172 (3d Cir. 2011)).

However, before turning to these elements, the Court must determine whether or not Rasta Imposta is requesting a mandatory injunction. Kangaroo argues Rasta Imposta is seeking "a mandatory injunction seeking the ultimate relief requested should it win the case," which Kangaroo argues would require the Court to apply a heightened burden on Rasta Imposta. Rasta Imposta, however, argues Kangaroo "mistakenly alleged" that it is seeking a mandatory injunction and maintains that it "is only seeking a preliminary injunction at this stage."

The Court finds that the question of whether Rasta Imposta is asking for a mandatory injunction or not depends not on the wording of the motion and the moving papers, but on the substance of the relief being requested. Accordingly, the language Rasta Imposta chose in framing its request does not resolve this issue.

"An injunction is mandatory if the injunction will either (1) 'alter the status quo by commanding some positive act' or (2) provide the moving party with 'substantially all the relief

sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" Coast to Coast Entm't, LLC v. Coastal Amusements, Inc., No. 05-3977, 2005 WL 7979273, at *9 (D.N.J. Nov. 7, 2005) (quoting Tom Doherty Assocs. v. Saban Entm't, 60 F.3d 27, 33-34 (2d Cir. 1995)). "Where a plaintiff seeks a mandatory injunction rather than a prohibitory injunction, the burden of showing an entitlement to the preliminary injunction is greater, as mandatory injunctions are generally disfavored." Id.

The Court finds Rasta Imposta is not requesting a mandatory injunction, and the Court will accordingly not apply a heightened burden in determining whether a preliminary injunction is warranted in this case.[1] The Court finds Rasta Imposta's request is to maintain the status quo established by the October 19, 2017 Stipulation of Standstill, which provided that Kangaroo would "cease manufacturing, ordering, offering for sale, advertising, marketing, promoting, selling and distributing Plaintiff's Banana Design (and any substantially similar Banana costume) until December 1, 2017." The Court further finds this is not a case where Rasta Imposta will be

---

[1]    This Court finds that even if Rasta Imposta could be said to be seeking a mandatory injunction it has met its burden of showing a clear and substantial likelihood of success on the merits.

6

granted all of its requested relief in such a way that the relief cannot be later undone.[2]

First, Rasta Imposta requests relief other than the enjoinment of Kangaroo's alleged copyright infringement. Rasta Imposta's Complaint pleads it "is entitled pursuant to 17 U.S.C. § 504 to either disgorgement of profits and recovery of actual damages, or statutory damages" under its copyright claim. Rasta Imposta further pleads an entitlement to attorneys' fees and costs pursuant to 17 U.S.C. § 505. Similarly, under its trade dress infringement claim, Rasta Imposta pleads it "is entitled to recover their damages, as well as Kangaroo's profits received as a result of the infringement, pursuant to 15 U.S.C. § 1117(a)." Second, the Court does not find the injunctive relief "cannot be later undone." If later shown to be warranted, the injunction can be lifted and the $100,000 bond will be used to make Kangaroo whole. The Court does not consider this to be a motion for a mandatory injunction.

## A. Reasonable Probability of Success on the Merits

The Court begins by considering the reasonable probability of success on the merits of Rasta Imposta's copyright infringement claim. "To establish infringement, two elements

---

[2]     The Court further questions whether Rasta Imposta's Motion for Preliminary Injunction could be considered to command "some positive act."

must be proven: (1) ownership of a valid copyright, and (2)
copying of constituent elements of the work that are original."
Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361
(1991).

### 1. Ownership of a Valid Copyright

"A plaintiff in a copyright infringement action must
prove . . . that the copyright upon which it rests its claim is
valid." Don Post Studios, Inc. v. Cinema Secrets, Inc., 124 F.
Supp. 2d 311, 315 (E.D. Pa. 2000). "Under 17 U.S.C. § 410(c),
only works that are registered within five years after the first
publication of the work are entitled to a presumption of
validity." Id. "For works registered after the five year
period following publication, it is within the court's
discretion to determine what evidentiary weight the registration
should be accorded." Id.; 17 U.S.C. § 410(c) ("In any judicial
proceedings the certificate of a registration made before or
within five years after first publication of the work shall
constitute prima facie evidence of the validity of the copyright
and of the facts stated in the certificate. The evidentiary
weight to be accorded the certificate of a registration made
thereafter shall be within the discretion of the court.").

The Certificate of Registration Rasta Imposta presents to
the Court lists an "effective date of registration" of March 26,
2010. However, it lists the date of first publication as March

9, 2001 – well over five years before the registration date. The Court thus finds there is no presumption of validity in this case due to the registration of the Banana Costume over nine years after its first publication. Nonetheless, the Court considers the existence of this registration in its analysis of the validity of the copyright.

The Court begins by considering whether the Banana Costume is a useful article. The Court finds the Banana Costume is a useful article under the definition provided in 17 U.S.C. § 101 ("A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."); see, e.g., Masquerade Novelty, Inc. v. Unique Indus., 912 F.2d 663, 670-71 (3d Cir. 1990) ("[A] costume . . . may serve, aside from its appearance, to clothe the wearer . . . .").[3]

The Supreme Court in Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002 (2017) clarified the boundaries of when useful articles can be eligible for copyright protection in its March 22, 2017 opinion.[4]

---

[3]    Rasta Imposta appears to concede the Banana Costume is a useful article. See Pl. Br. 12 ("Although banana costumes are worn on the body and therefore may qualify as 'useful articles,' they also can have distinctive sculptural features.").

[4]    As of the writing of this Opinion, this Court is the first in the Third Circuit to address the implications of Star Athletica.

> The Copyright Act . . . establishes a special rule for
> copyrighting a pictorial, graphic, or sculptural work
> incorporated into a "useful article," which is defined
> as "an article having an intrinsic utilitarian function
> that is not merely to portray the appearance of the
> article or to convey information." The statute does not
> protect useful articles as such. Rather, "the design of
> a useful article" is "considered a pictorial, graphical,
> or sculptural work only if, and only to the extent that,
> such design incorporates pictorial, graphic, or
> sculptural features that can be identified separately
> from, and are capable of existing independently of, the
> utilitarian aspects of the article."

Id. at 1008 (quoting 17 U.S.C. § 101). This analysis is

described as "separability." Id. Thus, under § 101, a

pictorial, graphic, or sculptural feature incorporated into a

useful article "is eligible for copyright protection if it (1)

'can be identified separately from,' and (2) is 'capable of

existing independently of, the utilitarian aspects of the

article.'" Id. at 1010 (quoting 17 U.S.C. § 101).

For the first requirement of separate identification,

"[t]he decisionmaker need only be able to look at the useful

article and spot some two- or three-dimensional element that

appears to have pictorial, graphic, or sculptural qualities."

Id. For the second requirement of independent existence, "[t]he

decisionmaker must determine that the separately identified

feature has the capacity to exist apart from the utilitarian

aspects of the article." Id. at 1010, 1016 ("[A]n artistic

feature of the design of a useful article is eligible for

copyright protection if the feature . . . would qualify as a

protectable pictorial, graphic, or sculptural work either on its

own or in some other medium if imagined separately from the

useful article.").

> In other words, the feature must be able to exist as its
> own pictorial, graphic, or sculptural work as defined in
> § 101 once it is imagined apart from the useful article.
> If the feature is not capable of existing as a pictorial,
> graphic, or sculptural work once separated from the
> useful article, then it was not a pictorial, graphic, or
> sculptural feature of that article, but rather one of
> its utilitarian aspects.

Id. at 1010. "[T]he ultimate separability question . . . is

whether the feature for which copyright protection is claimed

would have been eligible for copyright protection as a

pictorial, graphic, or sculptural work had it originally been

fixed in some tangible medium other than a useful article before

being applied to a useful article." Id. at 1011, 1012 ("In sum,

a feature of the design of a useful article is eligible for

copyright if, when identified and imagined apart from the useful

article, it would qualify as a pictorial, graphic, or sculptural

work either on its own or when fixed in some other tangible

medium.").

Rasta Imposta claims the following as the unique features

of the banana design: the overall shape and cutout holes of the

costume, the black ends of the banana, and the vertical lines

running down the middle of the banana. Rasta Imposta argues the

elements could be removed and displayed elsewhere, such as "to a

two-dimensional painter's canvas" or "made into a three-dimensional item like a piñata, a clay sculpture or a paperweight."

The Court addresses the cutout holes first. Kangaroo argues the cutout holes "are [a] utilitarian aspect of a useful article," and as such "cannot be protected through copyright." Kangaroo argues the cutout holes serve no "design or aesthetic purpose" and exist solely "to enable the costume to be worn by an individual, no different than the arm or neck cutouts on a shirt or the leg cutouts on a pair of shorts." A close reading of Star Athletica compels the Court to find that the cutout holes are not, per se, a feature eligible for copyright.

Star Athletica concerned a claim of copyright infringement for five designs of cheerleading uniforms. Id. at 1007. The Supreme Court held that "the only feature of the cheerleading uniform eligible for a copyright . . . [wa]s the two-dimensional work of art fixed in the tangible medium of the uniform fabric." Id. at 1012. The Court held that "respondents have no right to prohibit any person from manufacturing a cheerleading uniform of identical shape, cut, and dimensions to the ones on which the decorations in this case appear." Id. "They may prohibit only the reproduction of the surface designs in any tangible medium of expression – a uniform or otherwise." Id.

The Court finds the same must be said for the Banana Costume's cutout holes.  The cutout holes perform a solely utilitarian function.  They do not contribute to the Banana Costume's aesthetic except to produce it in a wearable form, i.e., to give it its utilitarian function.  However, the Court finds the other features of the Banana Costume can be identified separately from and are capable of existing independently of the utilitarian aspects.

As for the colors, lines, shape, and other features, Kangaroo argues that color is generally not protected by copyright and that "depicting basic features of a naturally occurring banana . . . [is] not original and not eligible for copyright protection."  Kangaroo argues "there is nothing original about making a banana yellow or the ends of a banana black, as this is exactly how a ripe banana appears in nature."

The Court must view the Banana Costume as a whole, as opposed to inspecting the individual components that come together to create the Banana Costume.  Indeed, it is "the combination of texture, color, size and shape" and the particular details of an item that are relevant.  See Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005).

> It means nothing that these elements may not be
> individually entitled to protection; "all creative works
> draw on the common wellspring that is the public domain.
> In this pool are not only elemental 'raw materials,'
> like colors, letters, descriptive facts, and the

13

catalogue of standard geometric forms, but also earlier
works of art that, due to the passage of time or for
other reasons, are no longer copyright protected."

Id. (quoting Tufenkian Import/Export Ventures, Inc. v. Einstein

Mommjy, Inc., 338 F.3d 127, 132 (2d Cir. 2003)).  "When an

author combines these elements and adds his or her own

imaginative spark, creation occurs, and the author is entitled

to protection for the result."  Id.  "This is true even when the

author contributes only a minimal amount of creativity."  Id.

The Court finds there is a reasonable probability of

success that Rasta Imposta will prove ownership of a valid

copyright.  First, the existence of the Certificate of

Registration, even if registered over nine years after the date

of first publication, is persuasive evidence to this Court.

Further, the Court finds a likelihood that Rasta Imposta can

prove that the banana design can both be identified separately

from and can exist independently from the utilitarian aspect of

the article.  The Court can easily identify the features of the

Banana Costume having a pictorial, graphic, or sculptural

quality.

These features include: a) the overall length of the

costume, b) the overall shape of the design in terms of

curvature, c) the length of the shape both above and below the

torso of the wearer, d) the shape, size, and jet black color of

both ends, e) the location of the head and arm cutouts which

14

dictate how the costume drapes on and protrudes from a wearer
(as opposed to the mere existence of the cutout holes), f) the
soft, smooth, almost shiny look and feel of the chosen synthetic
fabric, g) the parallel lines which mimic the ridges on a banana
in three-dimensional form, and h) the bright shade of a golden
yellow and uniform color that appears distinct from the more
muted and inconsistent tones of a natural banana.

The Court finds that, if these features were separated from
the costume itself and applied on a painter's canvas, it would
qualify as a two-dimensional work of art in a way that would not
replicate the costume itself.  The Court thus finds, although it
uses elements that might in and of themselves not be protectable
standing alone, that the design when considered as a whole is
separable and eligible for copyright protection.[5]  Plaintiff's

---

[5]     See Star Athletica, 137 S. Ct. at 1012 ("Applying this test
to the surface decorations on the cheerleading uniforms is
straightforward.  First, one can identify the decorations as
features having pictorial, graphic, or sculptural qualities.
Second, if the arrangement of colors, shapes, stripes, and
chevrons on the surface of the cheerleading uniforms were
separated from the uniform and applied in another medium – for
example, on a painter's canvas – they would qualify as 'two-
dimensional . . . works of . . . art,' § 101.  And imaginatively
removing the surface decorations from the uniforms and applying
them in another medium would not replicate the uniform itself.
Indeed, respondents have applied the designs in this case to
other media of expression – different types of clothing –
without replicating the uniform.  The decorations are therefore
separable from the uniforms and eligible for copyright
protection." (citation omitted)).

design is not like the familiar iconic outfit of a cheerleader known to all at issue in <u>Star Athletica</u>.[6]  Rather, it has unique pictorial, graphic, or sculptural features that did not exist until it was created.  To be sure, the Banana Costume is unlikely to end up in the Philadelphia Museum of Art but it represents artistic and stylistic choices.[7]  Its unique features reflect an "imaginative spark."

---

[6]    Although the Court applies <u>Star Athletica</u>, as it must, as relevant and binding precedent, the Court also notes that <u>Star Athletica</u> is factually distinguishable from the instant matter in a meaningful way.  At issue in <u>Star Athletica</u> was the iconic outfit of an American cheerleader.  From the film American Graffiti to high school football games on Friday nights to March Madness and similar Americana, these ubiquitious costumes are part of our collective culture.  It would distort the purpose and intent of copyright law to grant to one person or entity the right to control the bundle of rights associated with copyright for the lengthy term of copyright protection for an item so imbedded in the public consciousness.  To that end, the Court in <u>Star Athletica</u> separated the fanciful designs applied to cheerleading costumes from the utilitarian and ordinary costumes themselves as the relevant statute, 17 U.S.C. § 101, dictated.  In contrast, it is hard to say that a cheerleading uniform and a "banana costume" are of equal utility.  It seems safe to posit that there is no universal view of what a banana costume is or what it should look like.  As Rasta Imposta's uncontested submissions make clear there are literally dozens of unique and fanciful ways one can design a costume that suggests, mimics, or replicates some or most of the features of a banana.

[7]    The Court notes that Kangaroo's argument that Rasta Imposta's copyright is invalid because it merely created what we would all recognize as a banana would deny Andy Warhol copyright protection for his famous image of a ripe banana.  The Court views such a result as highly unlikely.  <u>See</u> <u>Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.</u>, 890 F. Supp. 2d 398 (S.D.N.Y. Sept. 7, 2012) (describing a longstanding dispute over the right to use and license the Warhol image).

**2. Copying of Constituent Elements of the Work that are Original**

Copying "may be demonstrated by showing that the defendant had access to the copyrighted work and that the original and allegedly infringing works share substantial similarities." Id. at 207-08. As a preliminary matter, it is clear to this Court that Kangaroo had access to the copyrighted work through Yagoozon's business relationship with Rasta Imposta, whereby Yagoozon sold Rasta Imposta's costumes, including the Banana Costume. This is sufficient for the Court to conclude there is a reasonable likelihood Rasta Imposta can prove Kangaroo's access to the copyrighted work.[8]

"'Substantial similarity,' in turn, is further broken down into two considerations: '(1) whether the defendant copied from the plaintiff's work and (2) whether the copying, if proven, went so far as to constitute an improper appropriation.'" Id. at 208 (quoting Atari, Inc. v. N. Am. Philips Consumer Elec. Corp., 672 F.2d 607, 614 (7th Cir. 1982)). The first prong requires the factfinder to "decide whether there is sufficient

---

[8]     Rasta Imposta's evidence also included testimony and photographs showing that Kangaroo displayed Rasta Imposta's product alongside its own at Kangaroo's booth at the industry's largest trade show in Las Vegas. The Court does not suggest that this evidence proves access to the original design before the competing design was created, only that this case involves competitors whose designs are well known to each other. This is not a case in which a defendant claims the allegedly infringing image was created independently, unknowingly, and innocently.

similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." Id. (quoting Whelan Assocs. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1232 (3d Cir. 1986)). "A showing of substantial similarity in this sense, coupled with evidence that the infringing author had access to the original work, permits a fact-finder to infer that the infringing work is not itself original, but rather is based on the original." Id.

"A finding of substantial similarity is an ad hoc determination." Educ. Testing Servs. v. Katzman, 793 F.2d 533, 541 (3d Cir. 1986). The Court "appl[ies] the reasonable person standard, under which 'the test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value.'" Id. (quoting Atari, 672 F.2d at 614).

For the second prong, "[t]he focus is . . . [on] 'whether the substantial similarities relate to protectable material.'" Id. (quoting Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 562 (3d Cir. 2002)). Here, "[a] court compares the allegedly infringing work with the original work, and considers whether a 'lay-observer' would believe that the copying was of protectable aspects of the copyrighted work." Winstead v. Jackson, 509 F. App'x 139, 143 (3d Cir. 2013). "The 'inquiry

involves distinguishing between the author's expression and the
idea or theme that he or she seeks to convey or explore,'
because the former is protected and the latter is not." Id.
(quoting Kay Berry, 421 F.3d at 208). "The court must determine
whether the allegedly infringing work is similar because it
appropriates the unique expressions of the original work, 'or
merely because it contains elements that would be expected when
two works express the same idea or explore the same theme.'"
Id. (quoting Kay Berry, 421 F.3d at 208). "It is a fundamental
premise of copyright law that an author can protect only the
expression of an idea, but not the idea itself." Kay Berry, 421
F.3d at 208.

A plaintiff "will have a more difficult time proving
infringement if his work contains only a minimal amount of
original expression." Id. "[A] copyright on a work which bears
practically a photographic likeness to the natural article . . .
is likely to prove a relatively weak copyright." Id. at 209
(alterations in original) (quoting First Am. Artificial Flowers,
Inc. v. Joseph Markovits, Inc., 342 F. Supp. 178, 186 (S.D.N.Y.
1972)). In such a case, "the plaintiff's burden will be that
much more difficult to sustain because of the intrinsic
similarities of the copyrighted and accused works." Id.
(quoting First Am. Artificial Flowers, 342 F. Supp. at 186).
Indeed, "when there is only a limited number of ways to express

an idea 'the burden of proof is heavy on the plaintiff who may have to show "near identity" between the works at issue.'" Id. (quoting Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 606-07 (1st Cir. 1988)); see also Concrete Mach. Co., 843 F.2d at 606 ("This showing is necessary because, as idea and expression merge, fewer and fewer aspects of a work embody a unique and creative expression of the idea; a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not required by the idea."). "[A]n author may base his work on the same inspiration as that of an earlier work, but he may not 'copy the copy.'" Kay Berry, 421 F.3d at 208 (quoting Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc., 575 F.2d 62, 65 (3d Cir. 1978)).

"In some instances, there may come a point when an author's expression becomes indistinguishable from the idea he seeks to convey, such that the two merge." Id. at 209. This is known as "merger." "In these circumstances, no protection is available for the expression; otherwise, the copyright owner could effectively acquire a monopoly on the underlying art or the idea itself." Id. This is rare, but usually found "in works with a utilitarian function." Id. "[A]n expression will be found to be merged into the idea when 'there are no or few other ways of expressing a particular idea.'" Katzman, 793 F.2d at 539 (quoting Apple Comput., Inc. v. Franklin Comput. Corp., 714 F.2d

1240, 1252-54 (3d Cir. 1983)).  "However, 'if the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result.'"  Id. (quoting Apple Comput., 714 F.2d at 1253).  "While the limited number of ways a concept can be addressed may be relevant to the extent of copying permitted, it does not render an original expression per se incapable of copyright protection."  Id.  Rather, "if other methods of expressing that idea are not foreclosed as a practical matter, then there is no merger."  Id. (quoting Apple Comput., 714 F.2d at 1253).

"In general, the merger doctrine is most applicable where the idea and the expression are of items found in nature, or are found commonly in everyday life."  Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 36 (1st Cir. 2001).  However, "even a realistic reproduction of a natural phenomenon may enjoy copyright protection."  Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 70 (1st Cir. 2009).  "The determining factors are whether the work possesses original expressive elements and whether the alleged infringer has copied those elements, as opposed to gleaning them from the phenomenon in nature."  Id.

Kangaroo argues the unique features claimed by Rasta Imposta "are necessary to manifest the idea of [a] wearable body suit which resembles a ripe, unpeeled banana, for which there

are few, if any, other means of expression." The Court understands there are admittedly few features to a banana but it does not necessarily follow that there are consequently only a few unique ways of designing a banana costume. In fact, the contrary appears to be true.

Rasta Imposta provides this Court with twenty-one banana costumes available in the marketplace that are easily distinguished from Rasta Imposta's design, which suggests that the limited number of options requirement necessary for merger to apply is absent. (Arena Decl. Ex. A). The Court has reviewed this submission and notes several unique ways of designing a banana costume.[9] The shape and curvature can vary, as can the existence and color of tips to the banana. Bananas can also be designed to appear ripe, overripe, or unripe, ranging in color from yellow, to brown, to green. The shape can be long or more stout, relatively elongated or thin or more plump. The banana may be whole or partially peeled. There can also be the production of vertical lines and the texture and material can differ.

In contrast, it appears to the Court that almost every feature of Kangaroo's design resembles Rasta Imposta's. Rasta Imposta argues "[a] side-by-side comparison of the costumes at

---

[9] The Court also notes that a banana itself can be expressed in a number of ways other than in the form of a costume.

issue is sufficient circumstantial evidence from which to infer copying." The Court agrees and finds Rasta Imposta has shown a reasonable likelihood of proving "near identity" of the costumes and that the copyright relates to protectable material.

The Court notes that the two deluxe costumes are both yellow in color and almost identically so, with Kangaroo's costume having a slightly more golden hue. However, both have black tips at both ends appearing to be roughly the same size and exactly the same color. Both have a near identical curvature with lines of the same yellow shade running vertically in roughly the same locations. The material and texture also appear substantially similar.[10] But for the slightly different shades of yellow, it would be near impossible for the Court, or any factfinder, to distinguish between the two.

The merger doctrine does not change this Court's conclusion. Admittedly, Rasta Imposta's Banana Costume, which so closely resembles a ripe banana, is not a broad copyright. Rather, the Court is inclined to find it is a relatively weak copyright. Nonetheless, the Court finds at this time sufficient evidence that Kangaroo's design is nearly identical to Rasta

---

[10] The tag of both costumes identifies they are both 100% polyester.

Imposta's such that it fits within the limited scope of Rasta

Imposta's copyright.[11]

---

[11]    Kangaroo also argues the <u>scenes a faire</u> doctrine applies
here.  This doctrine "applies to expression that is so
associated with a particular genre, motif, or idea that one is
compelled to use such expression."  <u>Tetris Holding, LLC v. Xio
Interactive, Inc.</u>, 863 F. Supp. 2d 394, 403 (D.N.J. 2012)
(stating <u>scenes a faire</u> "literally mean[s] a scene that must be
done").  "[U]nder this doctrine, copyright protection is denied
'to those expressions that are standard, stock, or common to a
particular topic or that necessarily follow from a common theme
or setting.'"  <u>Dun & Bradstreet Software Servs. v. Grace
Consulting, Inc.</u>, 307 F.3d 197, 214 (3d Cir. 2002) (quoting
<u>Gates Rubber Co. v. Bando Chem. Indus.</u>, 9 F.3d 823, 838 (10th
Cir. 1993)).  "<u>Scenes a faire</u> are afforded no protection because
the subject matter represented can be expressed in no other way
than through the particular <u>scenes a faire</u>."  <u>Whelan Assocs.</u>,
797 F.2d at 1236.  This has been applied to historical works:
"[T]here are only a limited number of ways to express factual
material, and therefore the purpose of the literary work –
telling a truthful story – can be accomplished only by employing
one of a limited number of devices," and "[t]hose devices
therefore belong to the idea, not the expression, of the
historical or factual work."  <u>Id.</u>  It is also frequently applied
"in the cinematic or literary arena," as well as "in certain
technological contexts."  <u>F.A. Davis Co. v. Wolters Kluwer
Health, Inc.</u>, 413 F. Supp. 2d 507, 513 (E.D. Pa. 2005); <u>accord
Southco, Inc. v. Kanebridge Corp.</u>, 390 F.3d 276, 287 (3d Cir.
2004) (Becker, J., concurring) ("<u>Scenes a faire</u> has been most
commonly employed in the literary or dramatic context . . . .").
In the technological context, for instance, it has been used "to
exclude from protection against infringement those elements of a
work that necessarily result from external factors inherent in
the subject matter of the work," such as "hardware standards and
mechanical specifications, software standards, and compatibility
requirements, computer manufacturer design standards, industry
programming practices, and practices and demands of the industry
being serviced."  <u>Southco</u>, 390 F.3d at 287 (Becker, J.,
concurring) (quoting <u>Mitel, Inc. v. Iqtel, Inc.</u>, 124 F.3d 1366,
1375 (10th Cir. 1997)).  The Court finds this doctrine, which
protects elements which should be free for all to use, does not
apply to the whimsical and fanciful article at issue here. <u>See
supra</u> note 6.

## B. Remaining Elements for a Preliminary Injunction

Finding a reasonable likelihood of success on the merits, the Court addresses the remaining elements for a preliminary injunction.

### 1. Irreparable Injury

As to irreparable injury to Rasta Imposta, "[i]rreparable harm 'must be of a peculiar nature, so that compensation in money alone cannot atone for it.'" Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990). "Grounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will." Id. "A finding of irreparable injury can also be based on likely confusion." Id. at 196. "Although a prima facie case for copyright infringement, alone, does not create a presumption of irreparable injury, 'irreparable harm may be based on past and future infringement' if a plaintiff can 'demonstrate a threat of future infringement "beyond mere conclusory allegations."'" Telebrands Corp. v. NewMetro Design, LLC, No. 16-1981, 2016 WL 8999932, at *17 (D.N.J. Nov. 10, 2016) (first citing Broad. Music, Inc. v. Publick House Partners, LLC, No. 13-3326, 2015 WL 3396804, at *4 (D.N.J. May 26, 2015); and then quoting TD Bank, N.A. v. Hill, No. 12-7188, 2015 WL 4523570, at *22 (D.N.J. July 27, 2015)).

The Court finds sufficient evidence of irreparable injury here based on likely confusion.  As the Court discussed above, the parties' banana costumes are nearly identical, creating a high likelihood of consumer confusion.  Further, the Court notes that "[a] copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm." Apple Comput., 714 F.2d at 1254.

**2. Balance of Hardships**

As to balancing the hardships to the parties, this prong is designed "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." Opticians Ass'n of Am., 920 F.2d at 197.  "[T]he balance [of hardships] weighs strongly in favor of [an injunction] where all that is requested is that Defendant comply with the Copyright Act." Warner Bros. Records Inc. v. Walker, 704 F. Supp. 2d 460, 469 (W.D. Pa. 2010) (second and third alterations in original) (quoting Lava Records, LLC v. Ates, No. 05-1314, 2006 WL 1914166, at *4 (W.D. La. July 11, 2006)).  The Court finds a balance of the hardships weighs in favor of granting a preliminary injunction when the only harm is

precluding, at least temporarily, a defendant from the sale of an infringing article.[12]

**3. Public Interest**

As to the public interest, "[p]reliminary injunctions are a common judicial response to the . . . infringement of an apparently valid copyright." CMM Cable, Inc. v. Keymarket Commc'ns, Inc., 870 F. Supp. 631, 640 (M.D. Pa. 1994) (quoting Dallas Cowboys Cheerleaders v. Score Board Posters, 600 F.2d 1184, 1187 (5th Cir. 1979)). "Courts have repeatedly held that copyright and trademark law protects not only individual parties, but the public at large." Sweet People Apparel, Inc. v. Fame of NY, Inc., No. 11-1666, 2011 WL 2937360, at *5 (D.N.J. July 19, 2011). "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections . . . ." Apple Comput., 714 F.2d at 1254-55 (quoting Klitzner Indus. v. H. K. James & Co., 535 F. Supp. 1249, 1259-60 (E.D. Pa. 1982)).

---

[12] "One of the goals of the preliminary injunction analysis is to maintain the status quo, defined as 'the last, peaceable, noncontested status of the parties.'" Opticians Ass'n of Am., 920 F.2d at 197 (citation omitted) (first citing Arthur Guinness & Sons, PLC v. Sterling Pub. Co., 732 F.2d 1095, 1099, 1101-02 (2d Cir. 1984)); and then quoting 2 J. McCarthy, Trademarks and Unfair Competition § 30:19 (2d ed. 1984)). As stated in the Court's consideration of whether Rasta Imposta was seeking a mandatory injunction, the Court finds the requested relief would maintain the status quo.

"The public interest will be served by upholding the copyright protection . . . ." Value Grp., Inc. v. Mendham Lake Estates, L.P., 800 F. Supp. 1228, 1234 (D.N.J. 1992) ("The public has no interest in permitting one company to copy another company's work."). The Court finds this element easily satisfied.

Accordingly, the Court will grant Rasta Imposta's Motion for Preliminary Injunction.

**IV.**

The Court next addresses Kangaroo's arguments that Rasta Imposta's Complaint fails to state a claim for trade dress infringement or unfair competition.[13]

**A. Standard of Review**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted

---

[13] For the same reasons the Court finds a preliminary injunction appropriate, the Court will not dismiss Count I of the Complaint under Federal Rule of Civil Procedure 12(b)(6). The Court finds the allegations in the Complaint contain sufficient evidence of the existence of a valid copyright and the copying of constituent elements to survive Kangaroo's Cross-Motion to Dismiss. Rasta Imposta's Complaint pleads that it owns a copyright registration, which this Court finds persuasive evidence of a valid copyright. The Complaint further pleads separability in including a picture of the Banana Costume, which allows the Court to determine that a pictorial, graphic, or sculptural feature can be identified separately from and can exist independently of the utilitarian aspects.

The Complaint further pleads the relationship between Ligeri, Yagoozon, and Kangaroo, which goes to Kangaroo's access to the copyrighted work. Further, in including a picture of both Rasta Imposta's and Kangaroo's costumes, the Court is able to discern substantial similarities.

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (alterations
in original) (citations omitted) (quoting <u>Ashcroft v. Iqbal</u>, 556
U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
<u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416
U.S. 232, 236 (1974)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 684 ("Our
decision in <u>Twombly</u> expounded the pleading standard for 'all
civil actions' . . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d
203, 210 (3d Cir. 2009) ("<u>Iqbal</u> . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before <u>Twombly</u>."). "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'" <u>Malleus</u>, 641 F.3d at 563 (quoting <u>Twombly</u>, 550 U.S. at
570).

**B. Trade Dress Infringement**

Count II of Rasta Imposta's Complaint asserts a claim for
trade dress infringement. "To establish trade dress
infringement under the Lanham Act, a plaintiff must prove that
(1) the allegedly infringing design is non-functional; (2) the
design is inherently distinctive or has acquired secondary
meaning; and (3) consumers are likely to confuse the source of

30

the plaintiff's product with that of the defendant's product."

McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007).

In light of the findings above and the Court's decision to grant a preliminary injunction on the copyright count, the Court finds this count adequately pled and will allow it to proceed. As noted above, certain elements of the Banana Costume represent unique non-functional and distinctive pictorial, graphic, and sculptural features. As for customer confusion, the Court has noted the products are almost identical in look and feel. The danger of confusion in the marketplace is clear.

**C. Unfair Competition**

Count III of Rasta Imposta's Complaint brings claims for common law and federal unfair competition. 15 U.S.C. § 1125(a) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

> Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The Court finds this claim cannot proceed at this time. Rasta Imposta's Complaint has not pleaded the use of a "word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that would allow for relief under 15 U.S.C. § 1125(a). Absent the pleading of facts in support of such a claim the Defendant lacks "fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). That Count will be dismissed without prejudice.

**V.**

The Court last addresses Kangaroo's request that this Court require Rasta Imposta to post a bond in the amount of $300,000. Federal Rule of Civil Procedure 65(c) provides: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any

party found to have been wrongfully enjoined or restrained."
The bond requirement is subject to "an extremely narrow
exception" for "when complying with the preliminary injunction
'raises no risk of monetary loss to the defendant.'" Zambelli
Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 426 (3d Cir. 2010)
(quoting Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 210
(3d Cir. 1990)) ("Rule 65(c) constrains a district court's
authority to enter a preliminary injunction, making it
contingent upon the posting of a bond."). The Court does not
find this exception applicable, as there is a high likelihood of
monetary loss to Kangaroo if the relief granted to Rasta Imposta
is ultimately deemed improvident. Accordingly, the Court will
require a bond be posted.

"[T]he amount of the bond is left to the discretion of the
court . . . ." Id. "[T]he injunction bond 'provides a fund to
use to compensate incorrectly enjoined defendants.'" Sprint
Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc., 335 F.3d 235, 240
(3d Cir. 2003) (quoting Instant Air Freight Co. v. C.F. Air
Freight, Inc., 882 F.2d 797, 804 (3d Cir. 1989)). "It is
generally settled that, with rare exceptions, a [party]
wrongfully enjoined has recourse only against the bond." Id.
(alteration in original) (quoting Instant Air Freight, 882 F.2d
at 804). "Thus, the bond generally limits the liability of the
applicant and informs the applicant of 'the price [it] can

33

expect to pay if the injunction was wrongfully issued.'" Id.
(alteration in original) (quoting Instant Air Freight, 882 F.2d
at 805).

Kangaroo asks for a bond in the amount of $300,000.
Kangaroo appears to base this amount on the allegation that
"defendant did $102,000 of sales of the banana costume in 2017
and would risk the loss of sales for the 2018 and 2019 seasons
if the preliminary injunction were wrongfully issued."  Based on
this allegation, it appears to the Court that lost sales for
2018 and 2019 would be projected to be around $204,000.
Kangaroo does not explain to the Court why almost $100,000 more
than that figure should be posted by Rasta Imposta and why that
amount should not be discounted to account for the difference
between gross sales and lost profits.  Kangaroo's loss of gross
sales would not be the true measure of harm if the injunction is
dissolved.  Given this lack of explanation, the Court will
require a bond in the amount of $100,000 to be posted by Rasta
Imposta.

## VI.

As the Court finds a reasonable likelihood of success on
the merits of the copyright infringement claim and the other
three elements for a preliminary injunction to be satisfied, the
Court will grant Rasta Imposta's Motion for Preliminary
Injunction.  The Court will grant Kangaroo's Cross-Motion to

Dismiss Count III of the Complaint but will deny the Cross-Motion to Dismiss as to Count I and Count II of the Complaint. The Court will further require Rasta Imposta to deposit security in the amount of $100,000 to maintain the preliminary injunction issued in this case.

An appropriate Order will be entered.


Date: __May 29, 2018__                    __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.